**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

ANDRE CHAPMAN, as Personal
Representative of the ESTATE OF
DARREN RAINEY, on behalf of the
Estate, and on behalf of Darren Rainey's
Survivors, Andre Chapman,
Renee Chapman, Deborah Johnson,
Chnieaqua Breelove and Harold Marr,

      Plaintiffs,

v.                                   Case No.

FLORIDA DEPARTMENT
OF CORRECTIONS, an Agency
of the State of Florida,
CORIZON, L.L.C., an out-of-state limited
liability corporation doing business and
registered in Florida,
ROLAND CLARKE and
CORNELIUS THOMPSON,

      Defendants.

_____/

## <u>COMPLAINT AND JURY DEMAND</u>

### <u>Introduction</u>

Darren Rainey was a 50-year-old mentally ill man serving a two-year sentence for a minor drug offense. Correctional officers, Defendants Roland Clarke and Cornelius Thompson, forced Mr. Rainey into a scalding hot shower for almost two hours, killing him in the process. The officers subjected Mr. Rainey to the "shower treatment" in retaliation for conduct that was the result of his mental illness. After ignoring his pleas for help, the officers found Mr. Rainey lying in the shower with no pulse, no respiration and his skin was peeling off. The deliberate conduct of each of the Defendants caused Rainey's untimely and horrific death.

**Parties**

1.      Plaintiff, Andre Chapman, is the duly appointed Personal Representative of the Estate of Darren Rainey, having been appointed Personal Representative by the Probate Division of the Circuit Court in and for Miami-Dade County, Florida, File No. 14-1535.  This action is brought by Andre Chapman, brother of Darren Rainey, in his capacity as Personal Representative of the Estate of Darren Rainey, on behalf of the Estate of Darren Rainey, and on behalf of Darren Rainey's survivors, Andre Chapman, Renee Chapman, Deborah Johnson, Chnieaqua Breelove and Harold Marr.

2.      At all times material to this action, Darren Rainey was an inmate in the custody of the Florida Department of Corrections (FDOC).  Mr. Rainey was housed at Dade Correctional Institution (Dade CI) in Florida City, Florida, a correctional institution operated by the FDOC.

3.      Defendant FDOC is an Agency of the state of Florida.  Defendant FDOC administers and operates the Florida prison system, including Dade CI.  Defendant FDOC receives federal financial assistance and is covered by the Rehabilitation Act.  Defendant FDOC is a public entity within the meaning of Title II of the Americans with Disabilities Act.

4.      Corizon, L.L.C. (Corizon) is a private limited liability corporation doing business and registered in Florida.  Corizon, L.L.C. was formerly Corizon, Inc., the company that was under contract with the FDOC in 2012 to provide care, including mental health care, to inmates housed at Dade C.I.  Corizon, Inc. converted to Corizon, L.L.C. on December 31, 2013 and has all of the assets and liabilities of Corizon, Inc.  Corizon's contract with FDOC required the provision of inpatient mental health care services to inmates housed in the inpatient mental

health unit at Dade CI.  Corizon's contract with FDOC was in effect at all times material to this action.

5.      Roland Clarke was a Correctional Officer employed by the FDOC from April 2010 until he resigned in July 2014.  At all times material to this action, Defendant Clarke worked at Dade CI.  Clarke is sued in his individual capacity for damages.

6.      Cornelius Thompson was a Correctional Officer employed by the FDOC from March 2010 through 2013.  At all times material to this action, Defendant Thompson worked at Dade CI.  Thompson is sued in his individual capacity for damages.

## Jurisdiction and Venue

7.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States, as well as being brought pursuant to the Americans with Disabilities Act (A.D.A.), 42 U.S.C. § 12132 and the Federal Rehabilitation Act, 20 U.S.C. § 794.

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

9.      The venue lies in this district pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to this claim occurred in this district.

## Facts

10.     The FDOC operates an inpatient mental health unit at Dade CI for the purpose of providing treatment to seriously mentally ill inmates.

11.     At all times material to this action Corizon provided treatment staff for the inpatient unit at Dade CI pursuant to a contract with the FDOC.

12.     On June 23, 2012, Darren Rainey suffered an agonizing and untimely death after being confined by Defendants Clarke and Thompson in a scalding hot shower for almost two hours on the Dade CI inpatient mental health unit.

13.     Mr. Rainey had a history of chronic and severe mental illness, and FDOC was made aware of that fact when Mr. Rainey was placed in FDOC custody in February 2012.

14.     When Mr. Rainey was received by the FDOC in February 2012, he was diagnosed by the FDOC with schizophrenia.  FDOC continually maintained Mr. Rainey's diagnosis of schizophrenia throughout the duration of his incarceration through the date of his death.

15.     Mr. Rainey was an individual qualified to participate in or receive the benefit of FDOC's services, programs, or activities.

16.     Mental illness impaired one or more of Mr. Rainey's major life activities.

17.     At all times material to this action, Mr. Rainey was housed on the inpatient mental health unit at Dade CI for the purpose of receiving treatment for his chronic and severe mental illness.

18.     Mr. Rainey required regular use of psychotropic medications to manage his mental illness and required the highest levels of inpatient mental health care provided by the FDOC while he was in its custody.

19.     On June 18, 2012, the mental health staff on the Dade CI inpatient unit noted Mr. Rainey was disheveled and had poor functioning, distorted thinking, and was smearing feces all over his cell.

20.     As a result of these manifestations of his mental illness, the staff gave Mr. Rainey an emergency involuntary injection of Haldol to manage the symptoms of his serious mental illness.

21. Five days later, on the evening of June 23, 2012, Mr. Rainey again smeared feces on himself and his cell.

22. Mr. Rainey's action of smearing feces on himself was caused by and was a manifestation of his serious mental illness.

23. On that same evening, Defendants Clarke and Thompson were assigned to the inpatient unit where Mr. Rainey was housed.

24. Defendants Clarke and Thompson observed Mr. Rainey smearing feces in his cell.

25. Defendants Clarke and Thompson removed Mr. Rainey from his cell.

26. Standard procedure on the inpatient unit would have been for Defendants Clarke and Thompson to notify mental health staff of Mr. Rainey's actions and to escort him to the closest shower for cleaning and decontamination.

27. Showers on the inpatient unit at Dade CI are single-person cells that are locked from the outside. Once placed inside, inmates cannot leave the shower unless released by the officers.

28. Inmates locked in the Dade CI inpatient unit shower cannot control the water or the water temperature. The water flow is controlled from outside of the shower and the water temperature is pre-set to avoid extreme temperatures or inadvertent scalding.

29. One shower on the second floor of the Dade CI inpatient unit was altered or broken in a way that allowed correctional officers to control the water temperature. Officers could increase the temperature of the water so that the shower reached scalding temperature.

30. Correctional officers on the inpatient unit at Dade CI, including Defendants Clarke and Thompson, had previously used this shower to torture and retaliate against mentally

ill inmates on the unit.  This was known to the officers, inmates and staff on the inpatient unit as the "shower treatment."

31.     Instead of following standard procedure, Defendants Clarke and Thompson escorted Mr. Rainey past several shower units to the altered or broken shower on the second floor and locked him in.

32.     Defendants Clarke and Thompson maliciously and sadistically turned on scalding hot water in Mr. Rainey's shower in retaliation for Mr. Rainey smearing feces on his body and cell.

33.     Mr. Rainey was heard screaming for the water to be shut off and begging to be let out of the shower.  Defendants Clarke and Thompson ignored his pleas.

34.     At 9:30 p.m., nearly two hours after they confined him in the shower, Defendants Clarke and Thompson found Mr. Rainey unresponsive in the shower.

35.     Defendant Thompson walked into the nurses' station and asked the nurses to examine Mr. Rainey.

36.     Upon arriving at the shower, the nurses found Mr. Rainey lying on his back on the shower floor.  Mr. Rainey was non-responsive, had no pulse and had no respirations.

37.     Mr. Rainey was placed on a stretcher and the nurses started chest compressions. A nurse ordered staff to call 911.

38.     A nurse taking Mr. Rainey's vital signs noted his tympanic body temperature was 104.9 degrees Fahrenheit with no pulse, no respiration and no blood pressure.

39.     A medical note, with a time of 9:40 p.m., noted that Mr. Rainey was "burned over 90% of his body, skin was hot/warm to touch and skin comes off when touched."

40.     Miami-Dade Fire Rescue arrived and Mr. Rainey was declared dead at 10:07 p.m.

41.     The abuse and torture of Mr. Rainey by Defendants Clarke and Thompson was because of and based on Mr. Rainey's mental illness.

42.     As a result of Defendant Clarke and Thompson's malicious and sadistic actions of placing Mr. Rainey in the shower and leaving him there to die, Mr. Rainey suffered a horrific death.

43.     Prior to Mr. Rainey's death, the FDOC knew about widespread abuse by correctional officers upon inmates with mental illness on the Dade CI mental health inpatient unit.

44.     In 2011, a psychological counselor at Dade CI reported several instances of physical abuse by correctional officers on inmates in the Dade CI inpatient unit to prison officials at Dade CI, including the warden. The counselor indicated that the abuse included officers kicking and beating an inmate while he was restrained.

45.     The counselor reported that abuse of inmates on the Dade CI inpatient unit by correctional officers occurred on a regular basis.

46.     The counselor filed a variety of complaints with the Dade CI prison officials and the FDOC Inspector General's office about the abusive treatment but never received a response.

47.     Additionally, inmates on the Dade CI inpatient mental health unit complained to FDOC staff that officers were using the "shower treatment" to retaliate against the most mentally ill inmates on the unit.

48.     Dade CI correctional officials, including supervisors on the inpatient unit and the prison warden, had actual knowledge of the widespread abuse of inmates on the inpatient mental health unit by correctional officers but failed to take any steps to stop the abuse.

49.     Mr. Rainey's death was a result of Defendant FDOC's deliberate indifference to the ongoing discrimination and abuse by correctional officers against inmates with mental illness on the Dade CI inpatient unit.

50.     The Dade CI inpatient unit treatment staff employed by Corizon had knowledge of the abuse of inmates by correctional officers in the Dade CI inpatient unit.

51.     Corizon treatment staff working the inpatient unit had actual knowledge that correctional officers were abusing inmates as retaliation for the behaviors of mentally ill inmates on the Dade CI inpatient unit.

52.     Inmates on the Dade CI inpatient mental health unit complained to Corizon staff that officers were using the "shower treatment" to retaliate against the most mentally ill inmates on the unit.

53.     Some of the treatment staff working the Dade CI inpatient unit reported the abuse to Corizon supervisory staff.  Corizon supervisory staff did nothing to report the allegations of abuse or investigate the allegations of abuse.

54.     Corizon supervisory staff told treatment staff not to do anything regarding the allegations of abuse.

55.     In spite of the actual knowledge of the abuse, Corizon supervisory staff at Dade CI made no attempt to report or stop the abuse by the Dade CI inpatient unit correctional officers.

56.     Corizon had a custom, policy, and practice of failing to intervene or failing to report instances of abuse by correctional officers of inmates in the Dade CI inpatient mental health unit

57.     As a result of Corizon's custom, policy and practice of failing to intervene, failing to report correctional officer abuse, and affirmatively telling staff not to do anything in response to concerns about abuse, Mr. Rainey died.

## Count One

### Violations of Title II of the Americans with Disabilities Act and Federal Rehabilitation Act by Defendant FDOC

58.     Plaintiffs repeat and reallege paragraphs 1 through 57 as if fully set forth herein.

59.     Count One is a claim for disability discrimination against Defendant FDOC for violating Title II of the Americans with Disabilities Act (A.D.A.) (public entities).  Title II of the A.D.A. prohibits disability-based discrimination by any public entity.  42 U.S.C. §§ 12131-12132, 28 C.F.R. § 39.130.

60.     The Federal Rehabilitation Act prohibits discrimination against an individual based on disability by any program or entity receiving federal funds. 29 U.S.C. 794(a) and (b)(2)(B).

61.     These disability anti-discrimination laws impose an affirmative duty on public entities to create policies or procedures to prevent discrimination based on disability.

62.     Mr. Rainey was disabled as defined at 42 U.S.C. § 12102(2), as he suffered a mental impairment that substantially limited one or more of his major life activities.

63.     Defendant FDOC is a program or entity which receives federal financial assistance.

64.     Defendant FDOC is a public entity as defined by Title II of the A.D.A.

65.     Defendant's prison, Dade CI, is a facility and its operation comprises a program and service for purposes of Title II of the A.D.A.

66.     Mr. Rainey was an individual qualified to participate in or receive the benefit of FDOC's services, programs, or activities.

67.     Mr. Rainey was abused because of his disabilities by FDOC's agents and employees at Dade CI.   Such abuse constitutes discrimination against individuals based on their disability in violation of the Rehabilitation Act and Title II of the A.D.A.

68.     FDOC's agents and employees discriminated against Mr. Rainey by abusing him specifically because of his mental illness and excluding him from treatment programs by subjecting him to discrimination.  This action is in violation of the Rehabilitation Act and Title II of the A.D.A.

69.     The abuse of Mr. Rainey on the Dade CI inpatient unit was carried out by Defendant FDOC's agents and employees at Dade CI while acting within the scope of their employment by FDOC.  Defendant FDOC is liable for the actions of its agents and employees when they committed the violations of the Rehabilitation Act and Title II of the A.D.A. alleged herein.

70.     FDOC discriminated against Mr. Rainey by failing to provide a non-abusive, safe treatment environment on the inpatient unit and, as a result, Mr. Rainey died.

71.     As a result of Defendant FDOC's deliberate indifference to ongoing discrimination against Mr. Rainey as a result of his mental illness, Mr. Rainey suffered a horrific death.

WHEREFORE, on this Count One, as a result of the tragic and untimely death of Darren Rainey in violation of the Rehabilitation Act and the A.D.A., the Survivors of and the Estate of Darren Rainey have sustained the following damages, and therefore seek same from Defendant FDOC:

A.      The Estate of Darren Rainey seeks the following damages:

1.  loss of prospective net Estate accumulations;

2.  loss of earnings of Darren Rainey from the date of his death, less lost support of his Survivor excluding contributions in-kind with interest; and

3.  Mr. Rainey's pain, suffering, emotional distress and loss of enjoyment of life.

B.      Andre Chapman, Renee Chapman, Deborah Johnson, Chnieaqua Breelove and Harold Marr, as the survivors of Darren Rainey, seek the following damages:

1.  loss of support and services of their sibling;

2.  mental pain and suffering and emotional distress caused by the loss of their sibling.

Plaintiffs respectfully request that this Court award Plaintiffs the aforementioned damages, any and all other compensatory damages suffered by Plaintiffs, attorneys' fees, and such other and further relief as the Court deems just and equitable.

**Count Two**

**Violation of the Eighth and Fourteenth Amendments by Defendant Corizon**

72.     Plaintiffs repeat and reallege paragraphs 1 through 57 as if fully set forth herein.

73.     This Count is brought pursuant to 42 U.S.C. § 1983 to redress violations of the Eighth and Fourteenth Amendments of the Constitution of the United States.

74.     Defendant Corizon held the contract to provide mental health services at Dade CI and was acting under color of state law at all times material to this action.

75.     The physical abuse and brutality by FDOC correctional officers against Mr. Rainey caused his death.

76.     Defendant Corizon had knowledge of the abuse of inmates on the Dade CI inpatient mental health unit and knew that the abuse posed a pervasive risk of harm to Mr. Rainey and other inmates on that unit, but Corizon employees failed to report the abuse or to otherwise intervene to halt the abuse.

77.     The actions and inactions of Corizon's employees were the result of Corizon's custom, policy or practice of failing to report or intervene in instances of abuse by correctional officers on inmates in the Dade CI inpatient mental health unit, including Darren Rainey.

78.     Defendant Corizon's custom, policy or practice of failing to report or intervene in instances of abuse by correctional officers on inmates in the Dade CI inpatient mental health unit constituted reckless disregard of a substantial risk of serious harm to those inmates, including Darren Rainey.

79.     Defendant Corizon's custom, policy or practice resulted in Darren Rainey's death in violation of his rights as guaranteed by Eighth and Fourteenth Amendments to the United States Constitution.

WHEREFORE, on this Count Two, as a result of the tragic and untimely death of Darren Rainey, the Survivors of and the Estate of Darren Rainey have sustained the following damages, and therefore seek same from Corizon:

A.     The Estate of Darren Rainey seeks the following damages:

1.  loss of prospective net Estate accumulations;

2.  loss of earnings of Darren Rainey from the date of his death, less lost support of his Survivor excluding contributions in-kind with interest; and

3.  Mr. Rainey's pain, suffering, emotional distress and loss of enjoyment of life.

B.      Andre Chapman, Renee Chapman, Deborah Johnson, Chnieaqua Breelove and Harold Marr, as the survivors of Darren Rainey, seek the following damages:

1.  loss of support and services of their sibling;

2.  mental pain, suffering and emotional distress caused by their sibling's death.

Plaintiffs respectfully request that this Court award Plaintiffs the aforementioned damages, any and all other compensatory damages suffered by Plaintiffs, attorneys' fees, and such other and further relief as the Court deems just and equitable.

## Count Three

### Violation of the Eighth and Fourteenth Amendments
### by Defendants Clarke and Thompson

80.     Plaintiffs repeat and reallege paragraphs 1-57 as if fully set forth herein.

81.     This Count is brought pursuant to 42 U.S.C. § 1983 to redress violations of the Eighth and Fourteenth Amendments of the Constitution of the United States.

82.     At all times material to this action, Defendants Clarke and Thompson were employed by the Florida Department of Corrections at Dade CI.  All actions performed by the Defendants were done under color of state law and constitute state action.

83.     Defendants Clarke and Thompson's actions in forcing Mr. Rainey into a scalding hot shower were done maliciously and sadistically for the very purpose of causing harm to Mr. Rainey.  These actions were not done in a good faith effort to maintain or restore discipline.

84.     Defendants Clarke and Thompson's actions were a proximate cause of Rainey's death.

85.     Defendants Clarke and Thompson's actions violated the Eighth and Fourteenth Amendments to the Constitution, and caused physical pain and suffering, emotional distress to Rainey and his Estate and, ultimately, death to Rainey.

86.     Defendants Clarke and Thompson are jointly and severally liable to Plaintiff for compensatory damages.

WHEREFORE, on this Count Three, as a result of the tragic and untimely death of Darren Rainey, the Survivors of and the Estate of Darren Rainey have sustained the following damages, and therefore seek same from Defendants Roland Clarke and Cornelius Thompson:

A.     The Estate of Darren Rainey seeks the following damages:

1.  loss of prospective net Estate accumulations;

2.  loss of earnings of Darren Rainey from the date of his death, less lost support of his Survivor excluding contributions in-kind with interest;

3.  Mr. Rainey's pain, suffering, emotional distress and loss of enjoyment of life; and

4.  punitive damages.

B.     Andre Chapman, Renee Chapman, Deborah Johnson, Chnieaqua Breelove and Harold Marr, as the survivors of Darren Rainey, seek the following damages:

1.  loss of support and services of their sibling;

2.  mental pain, suffering and emotional distress as the result of the loss of their sibling; and

3.  punitive damages.

Plaintiffs respectfully request that this Court award Plaintiffs the aforementioned damages, any and all other compensatory damages suffered by Plaintiffs, attorneys' fees, and such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues that can be heard by a jury.

Respectfully submitted,

/s/ Peter P. Sleasman
Peter P. Sleasman, Esq.
Fla. Bar No. 367931
Lead Trial Counsel

Kristen Cooley Lentz, Esq.
Fla. Bar No. 649635

Florida Institutional Legal Services Project
Florida Legal Services
14260 W. Newberry Road, #412
Newberry, FL 32669
(352) 375-2494 (telephone)
(352) 331-5202 (facsimile)
peter@floridalegal.org
kristen@floridalegal.org

David Boyer, Esq.
Florida Bar No. 90917

Molly J. Paris, Esq.
Florida Bar No. 90486

Disability Rights Florida
1930 Harrison St Ste 104
Hollywood, Florida 33020
(850) 488-9071 (telephone)
(850) 488-8640 (facsimile)
davidb@DisabilityRightsFlorida.org
mollyp@DisabilityRightsFlorida.org